IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) ) Plaintiff, ) ) ) v. ) ) ) ) CEDRIC WITCHER, ) ) Defendant. ) | Case No. 2:23-cr-20056-JTF |

**ORDER GRANTING MOTION FOR INVOLUNTARY TREATMENT TO RESTORE COMPETENCY.**

On March 12, 2025, the Government filed a Motion for Hearing to Determine Appropriateness of Involuntary Treatment to Restore Competency. (ECF No. 42 (sealed).) The Court held a *Sell*[1] hearing to determine if the Defendant, Cedric Witcher ("Witcher"), meets the criteria for involuntary treatment to restore competency. (ECF No. 40.) The Government filed a post hearing brief in support of involuntary treatment to restore Witcher's competency filed on March 31, 2025. (ECF No. 48 (sealed.) Defendant also filed a post hearing brief, but in opposition to the involuntary administration of psychotropic drugs to render him competent to stand trial. (ECF No. 52.) For the following reasons, the Court **GRANTS** the Government's motion.

---

[1] *Sell v. United States*, 539 U.S. 166 (2003).

1

## I.   BACKGROUND

On March 30, 2023, Cedric Witcher ("Witcher") was charged in a one-count indictment with intentionally assaulting and inflicting bodily injury upon a correctional officer while he was housed at the Federal Correctional Institute, Memphis ("FCI Memphis") for an unrelated charge, in violation of 18 U.S.C. §§ 111(a)–(b) & 1114. (ECF No. 1,1 (sealed).) On May 10, 2023, the Federal Public Defender was appointed to represent Witcher, who filed a motion for a mental evaluation pursuant to Fed. R. Crim. P. 12.2(c)(1)(A). (ECF No. 9 & 12 (sealed).) The motion requested that Witcher be transferred to a facility for a mental examination pursuant to 18 U.S.C. § 4241 and § 4242, in order to determine his current state of mental and physical health, his mental state at the time of the charged offense, and the best treatment for same in order that he may effectively assist counsel in defense of his case. (*Id.* at 2.) The motion was granted and Witcher was transferred to BOP's Metropolitan Correctional Center in Chicago, Illinois ("MCC Chicago") for evaluation. (ECF No. 18 (sealed).) (ECF No. 54, 1 (sealed).)

### A.   Forensic Evaluation Report dated September 14, 2023[2]

Witcher arrived at MCC Chicago on June 14, 2023. (ECF No. 54, 1 (sealed).) While there, he was assigned to a housing unit; he did not behave violently toward any patients or staff. (*Id.* at 5.) Dr. Kristin Conlon, Psy.D. diagnosed Defendant with Schizophrenia and an Unspecified Substance Related Disorder. (*Id.* at 7–8.) It was Dr. Conlon's opinion that Defendant's "delusions, poverty of speech, partial orientation, and distractibility associated with schizophrenia are currently impairing his factual understanding, ability to engage in rational-decision making, communicate clearly, and ability to work with his attorney" and that he "does not appear

---

[2] This report was communicated to the Court and the parties on August 19, 2023.

appropriate for the continuation of legal proceedings at this time." (*Id.* at 10.) Dr. Conlon recommended that Witcher "be sent to a setting with a specific competency restoration program to provide him with the opportunity to receive treatment for his psychotic disorder." (*Id.*)

### B. Forensic Evaluation Report dated September 26, 2024[3]

On October 13, 2023 the Court concurred with Dr. Conlon's opinion and entered an Order committing Defendant to the custody of the Attorney General under 18 U.S.C. § 4241(d)(1) for treatment as may be necessary to restore Defendant to competency. (ECF No. 24 (sealed).) Pursuant to the Order, Witcher was transferred to the Bureau of Prisons Federal Medical Center in Devens, Massachusetts ("FMC Devens") for competency restoration treatment and follow-up evaluation. (Exhibit 1, Forensic Psychological Report of Chad Brinkley, PhD, ABPP ("Dr. Brinkley"), 2.) Defendant was admitted to FMC Devens and was evaluated by staff. (*Id.*) Upon his arrival, he was placed in a secure mental health unit due to staff concerns about his current charge. He has remained there since. (*Id.*) Dr. Brinkley diagnosed Defendant with Schizophrenia, Cannabis Use Disorder, and Opiate Use Disorder, and concluded that Defendant "is unlikely to be restored to competency in the foreseeable future unless he can be treated with anti-psychotic medications." (*Id.* at 15 & 25.) Dr. Brinkley reported that Witcher refused voluntary medication and suggested that if the Court concurred with his opinion, it could hold a hearing pursuant to *Sell v. United States*, 539 U.S. 166 (2003) to determine if Defendant meets the criteria to be treated involuntarily. (*Id.*)

---

[3] Dr. Brinkley clarified at the *Sell* hearing that the date on the cover letter is October 4, 2024, but the date of the report is September 26, 2024. (ECF No. 43, 19 (sealed).)

3

### C. *Sell* Hearing on March 12, 2025

On March 12, 2025, the Court held a *Sell* hearing to determine if Defendant meets the criteria for involuntary treatment to restore competency. (ECF No. 40.) Prior to the hearing, defense counsel filed a motion to allow Defendant to participate in the hearing via video conference. The Court granted the Motion and ordered FMC Devens to produce Defendant for the hearing via video. (ECF Nos. 33 & 39.) However, Witcher refused to participate in the hearing by video and also refused to meet with defense counsel prior to the hearing. (ECF No. 40.)

At the *Sell* hearing, the Government expert Dr. Brinkley stated that he based his primary diagnosis of schizophrenia on a "review of previous evaluation, the records that were available, behavioral observations of Mr. Witcher, and the interview." (ECF No. 43, 22 (sealed).) He opined that he does not believe that Defendant can be restored to competency without medication because Witcher does not believe that he has a mental health condition, he has refused to leave his room to attend competency restoration groups, and he has become more withdrawn and has even stopped showering. (*Id.* at 31.) Witcher has no motivation to participate in any kind of treatment. (*Id.*)

Dr. Brinkley testified that the primary treatment for psychotic disorders like schizophrenia are antipsychotic medications like Haldol or Abilify. (*Id.* at 27.) Side effects vary according to individual and personal reactions to medications. (*Id.* at 28.) Typical side effects of Haldol are dry mouth, tremors, and muscle stiffness—all of which can be minimized or treated with other medications. (*Id.* at 28–29.) Most individuals who take Haldol for long periods or at high doses as prescribed do not have serious side effects, although some individuals who are on these medications can sometimes develop side effects. (*Id.* at 30.) None of the usual side effects would prevent Defendant from participating in his defense, but would generally enhance the fairness of the proceedings. (*Id.* at 28.) During the course of the treatment, Defendant would be monitored by

nurses, psychologists, and a psychiatrist, and he would receive regular checkups and lab work. (*Id.* at 29.) Generally, in cases of court-ordered involuntary medication to restore competency, a defendant is typically only required to take the medication until the end of the legal proceedings. (*Id.* at 30.) Dr. Brinkley expects Defendant to benefit from the treatment with antipsychotic medication within 30 days, and his symptoms to be better controlled by the end of 120 days. (*Id.* at 56.)

## II.     LEGAL STANDARD

The Supreme Court has held that in rare circumstances, "the Constitution permits the Government involuntarily to administer antipsychotic drugs to mentally ill defendant facing serious criminal charges in order to render that defendant competent to stand trial." *Sell*, 539 U.S. at 179–80. There are four factors a district court must consider to determine whether involuntary medication may be used to render a defendant competent to stand trial where he does not pose a danger to himself or to the community. *See United States v. Green*, 532 F.3d 538, 545 (6th Cir. July 16, 2008). The Government must prove by clear and convincing evidence that: (1) an important governmental interest exists; (2) involuntary medication will significantly further that interest; (3) involuntary medication is necessary to further that interest; and (4) administration of the drugs must be medically appropriate for the individual defendant. *United States v. Hickman*, No. 3:21-cr-00146, 2023 WL 4938407, at *4 (M.D. Tenn. Aug. 2, 2023) (citing *Green*, 532 F.3d at 545); and *United States v. Berry*, 911 F.3d 354, 360 (6th Cir. 2018). The important governmental interest must be balanced against the "defendant's significant liberty interest under the Constitution in avoiding the unwanted administration of antipsychotic drugs." *Hickman*, No. 3:21-cr-00146, 2023 WL 4938407, at *4 (internal citations omitted). The drastic step of administering medication with side-effects "to an unwilling criminal defendant should be taken rarely, and only

when absolutely necessary to fulfill an important governmental interest, to avoid deprivation of the defendant's "liberty … without due process of law."" *Berry*, 911 F.3d at 357 (quoting U.S. Const. Amends. V, XIV § 1).

Based on the entire record, the Court finds that the Government established each *Sell* factor by clear and convincing evidence.

### III.  DISCUSSION

A. **Important Governmental Interest**

The Sixth Circuit's consideration of the first *Sell* factor involves a two-part analysis: (1) whether the alleged crime was sufficiently serious to establish an important governmental interest; and if so, (2) whether there were any mitigating factors that reduce the government's interest under *Sell*. *See Berry*, 911 F.3d at 354.

*1. The seriousness of the crime charged*

For an important governmental interest to be at stake, a defendant must be charged with a serious crime. *Hickman*, No. 3:21-cr-00146, at *4. To determine whether a crime is serious, the Sixth Circuit looks to the maximum penalty authorized by statute. *Id.* Here, Witcher is charged with intentional, forcible assault of a correctional officer and inflicting bodily injury upon her in violation of 18 U.S.C. §§ 111(a)–(b) & 1114. (ECF No. 1.) Both parties agree that the maximum penalty for the charged offense is 20 years,[4] which the Sixth Circuit has found to be serious enough as to warrant involuntary medication. *See United States v. Grigsby*, 712 F.3d 964, 969 (6th Cir. 2013) (determining that the government had an important interest in prosecuting an accused bank robber who faced a 20-year sentence).

---

[4] *See* 18 U.S.C. § 111(b).

Since the Government has an important interest in prosecuting Witcher, the Court next considers whether there are any mitigating factors that reduce this interest.

### 2. *Mitigating factors lessening the government's interest*

Defendant bears the burden of proving special circumstances exist that undercut the government's interest; no single mitigating factor controls this analysis. *United States v. Sherrill*, 834 F. App'x 223, 229 (6th Cir. 2020). The Sixth Circuit has previously found mitigating circumstances to include the non-violent nature of the charged crime, the risk of harm to defendant himself and others, the likelihood of civil commitment if not prosecuted, and the length of pre-trial confinement. *See Berry*, 911 F.3d at 362–66.

Here, defense counsel cites four special circumstances that weigh against finding an important governmental interest: understaffing at the facility prevented the establishment of a therapeutic bond with Defendant to see if he would accept his diagnosis and the need for medication; understaffing at the facility prevented Defendant from having an opportunity to demonstrate that he is not a high risk for violence or dangerousness; Defendant is not exhibiting any risk of harm to others or himself; and Defendant's likelihood of civil commitment, if not prosecuted, is far beyond mere possibility. (ECF No. 52, 9–14.)

The Court is not persuaded by defense counsel's arguments. Three of Witcher's special circumstances are attributed to "understaffing at the facility." First, Witcher is charged with a crime of violence, where he is alleged to have attacked a correctional officer at a bureau of prisons facility. Dr. Brinkley indicated that although Witcher is not currently violent towards himself or others, based upon the violent nature of the charge against him, there is a significant risk that he would become violent if he were not in a locked housing unit. (ECF No. 43, 64 (sealed).) It is for this reason that Defendant is in a secure mental health unit, not because of staffing levels at the

facility. (Ex. 1, 2, 9.) Moreover, the likelihood of civic commitment is, at best, speculative and uncertain because Witcher has not been evaluated to determine whether he should be civilly committed. *See Sherrill*, 834 F. App'x at 230 (citation modified) (stating that although absolute certainty as to civil confinement is not required, the government's interest in prosecution is not diminished if the likelihood of civil commitment is uncertain). Importantly, as to the length of pre-trial confinement, Defendant is currently serving a previously imposed 10-year sentence and is not scheduled to be released until August 2026 (ECF No. 43, 8–9 (sealed).) Thus, under 18 U.S.C. § 3585(b), Defendant's time in custody will not be credited against any future sentence that may be imposed if he is convicted on the pending charge because his time in custody is being credited against his current sentence.

The Court finds that there are no mitigating circumstances present in Witcher's case that outweigh the seriousness of his offense. Therefore, the Government has an important interest in prosecuting him.

### B. Involuntary Medication Furthers the Governmental Interest

Once the Court finds that an important governmental interest exists, the government must prove that the administration of involuntary medication will further that interest. *Hickman*, No. 3:21-cr-00146, 2023 WL 4938407, at *4. It can do so by showing that the administration of involuntary medication will likely restore the defendant to competency and is unlikely to have side-effects that will interfere with his ability to assist counsel in conducting the trial defense. *See Sherrill*, 834 F. App'x at 230. In the Sixth Circuit, "[t]he standard is not certainty, but rather substantial probability" that the defendant would be restored to competency without unmanageable side effects. *United States v. Payne*, 539 F.3d 505, 509 (6th Cir. 2008).

Here, the Government has provided adequate proof that administration of medication is substantially likely to make Witcher competent to stand trial. In his report and testimony at the *Sell* hearing, Dr. Brinkley indicated that a majority of people with schizophrenia respond well to antipsychotic medication, and it is "substantially likely" Defendant will be restored to competency if he takes an appropriate medication for a long enough period at a therapeutic dose. (ECF No. 48, 8 (sealed).) In Dr. Brinkley's opinion, involuntary medication is the only viable option for Witcher to become competent since he has refused to take medication voluntarily. (*Id.*) Dr. Brinkley testified that he expects Defendant to show positive signs of benefit from treatment within 30 days and that Witcher will likely be restored to competency within 120–180 days. (*Id.*)

Additionally, the Government has satisfied its burden by showing that involuntary medication is unlikely to have any side-effects that will interfere with Defendant's ability to assist counsel in conducting his defense. Dr. Brinkley testified that specific side-effects of treatment will depend on the individual and their reaction to the medications. (ECF No. 43, 28 (sealed).) As noted above, common side of treatment with Haldol are dry mouth, tremors, and muscle stiffness which can be mitigated with other medication prescribed simultaneously. (*Id.* at 28–29.) He also indicated that serious side effects, including death, are "incredibly rare and are roughly on par with the chance of dying from the administration of general anesthesia under surgery." (*Id.* at 51.) During the course of treatment, Witcher would be monitored by a nursing staff, a psychologist staff, and a psychiatrist, and he would undergo regular checks as well as lab work to monitor the efficacy of the medication and any potential side effects. (*Id.* at 29.) Even so, there is no way to guarantee that no side effects would occur. Despite this, in Dr. Brinkley's opinion, "psychiatric medication is the only way that Mr. Witcher has a chance to become competent in order to proceed." (*Id*. at 27.)

Defense counsel has neither challenged Dr. Brinkley's conclusions nor put on his own expert in opposition. Therefore, the Court finds that the Government has proven by clear and convincing evidence that antipsychotic medication will further the governmental interest.

### C. Involuntary Medication is Necessary to Further These Interests

Third, the Court must conclude that involuntary treatment with antipsychotic medication is necessary to further the governmental interest in prosecuting the defendant and "that any alternative, less intrusive treatments are unlikely to achieve substantially the same results." *Sell*, 539 U.S. at 181. Although therapeutic treatment and voluntary administration of antipsychotic medication would certainly be less intrusive than involuntary medication, the Government has shown that they would not be viable alternatives at this stage.

At the *Sell* hearing, Dr. Brinkley testified that Witcher has been unwilling to participate in any kind of therapeutic activity because he does not believe he has any kind of mental illness. (ECF No. 43, 40-41 (sealed).) Every time Defendant has been afforded the opportunity to voluntarily leave his room in order to engage in any kind of interaction or programming, he has refused. (*Id.* at 64.) Dr. Brinkley advises that a:

> brief course of cognitive behavioral therapy would have sufficient impact on Mr. Witcher's symptoms to restore competency by itself. Generally, cognitive behavioral interventions tend to work best for symptoms of schizophrenia when used in conjunction with anti-psychotic medication . . . [Mr. Witcher] has, at times, been uncooperative with assessments. He has expressed no interest in treatment. As such, it seems unlikely cognitive therapy will be sufficient to restore competency in his case.

(Ex. 1, 23–24.)

The Court finds that involuntary medication is necessary to further the Government's interest, and that there are no available, less intrusive treatments that are likely to achieve

substantially the same result. Accordingly, the Government has established the third *Sell* factor by clear and convincing evidence.

### D. Involuntary Medication is Medically Appropriate

The fourth *Sell* factor requires that the district court conclude that the administration of involuntary medication is "in the patient's best medical interest in light of his medical condition." *Sherrill*, 843 F. App'x at 232 (quoting *Sell*, 539 U.S. at 181). Under this factor, "[t]he specific kinds of drugs at issue may matter," because "[d]ifferent kinds of antipsychotic drugs may produce different side effects and enjoy different levels of success." *Id.*

Defense counsel raises concerns about the sufficiency of the government's evidence relating to this factor. Citing *United States v. Green*, 532 F.3d 538 (6th Cir. 2008), defense counsel argues that the Government offered only "a simple discussion of anti-psychotic drugs and their benefits and burdens in a general manner . . . [and] in no way consider[ed] the particularized medical needs to the defendant in question. (ECF No. 52, 15.)

Upon a review of the record and the case law, the Court finds that the Government has presented clear and convincing evidence to show that involuntary medication is in Defendant's best medical interest in light of his overall condition. Defendant has been diagnosed with schizophrenia by Drs. Conlon and Brinkley. (ECF No. 54, 7–8 (sealed) & Ex. 1, 15.) Both experts have provided extensive forensic psychological reports, and Dr. Brinkley also testified in depth at the *Sell* hearing.

Dr. Brinkley has identified Haldol and Abilify as the primary medications for treatment of anti-psychotic disorders like schizophrenia. (ECF No. 43, 27 (sealed).) He testified that in moving forward, a psychiatrist would look at the available medications which are typically approved to treat schizophrenia. Then, based on Witcher's history and diagnosis, would choose a medication

and decide how it is to be administered. (*Id.* at 49-50.) As to the exact dosage, he stated in his report that "as the treatment response is measured, the dosage might be adjusted to reach the optimal level of efficacy." (Ex. 1, 25.) He also identified side-effects that can be mitigated or managed, monitoring by staff, and Defendant's response to the medication. (ECF No. 43, 28–29, 52 (sealed).) Finally, Dr. Brinkley expects Defendant to respond to treatment within 30 days and restored to competency within 120–180 days. (Ex. 1, 25.)

While the Government does not discuss any specific risks in Defendant's particular medical condition, the defense counsel does not point to any either. Thus, the Court finds that involuntary medication is medically appropriate for Defendant.

## IV.    CONCLUSION

The Court concludes that the Government met its burden in showing by clear and convincing evidence that there is an important governmental interest in prosecuting Defendant that is not lessened by any mitigating factors, the administration of involuntary medication furthers this interest, the administration of involuntary medication is necessary to further this interest, and such treatment is medically appropriate for Defendant at this time. The Court **GRANTS** the Government's motion for involuntary treatment and hereby **DIRECTS** the Bureau of Prisons ("BOP") to commit Defendant, Cedric Witcher, for involuntary treatment for a period of up to 180 days as may be necessary to restore him to competency.

**IT IS SO ORDERED** this 21st day of July, 2025.

*s/John T. Fowlkes, Jr.*
JOHN T. FOWLKES, JR.
UNITED STATES DISTRICT JUDGE